AUTO-OWNERS INSURANCE COMPANY, Plaintiff-Appellant, v. ERNEST E. GRAY, Indiv. and as Adm'r of the Estate of Lynda Gray, Deceased, *et al.*, Defendants-Appellees (Gary E. Miller *et al.*, Defendants).

Third District   No. 3—88—0466

Opinion filed March 17, 1989.

Myers, Daugherity, Berry & O'Connor, Ltd., of Ottawa (Eugene P. Daugherity, of counsel), for appellant.

Law Offices of Peter F. Ferracuti, P.C., of Ottawa (Mark A. Schindler, of counsel), for appellee Ernest E. Gray.

Anthony C. Raccuglia, of Anthony C. Raccuglia & Associates, of Peru (James A. McPhedran, of counsel), for other appellees.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Auto Owners Insurance Company brought this action seeking a declaratory judgment regarding its liability under a personal automobile insurance policy. Plaintiff seeks a determination that the policy did not afford coverage because the vehicle being operated by the insured, defendant Gary Miller, at the time of the accident was furnished for his frequent and regular use. The trial court determined the vehicle was not furnished for Miller's regular use because there was a deviation from the permitted uses at the time of the accident.

Gary Miller was involved in an accident while driving a pickup truck owned by his employer, La Salle County Asphalt. The accident occurred on the evening of September 9, while Miller was returning from a golf outing.

Miller was assigned the pickup truck in May of 1982; the truck was in his exclusive possession up until the date of the accident in September 1984. Miller kept the truck at his personal residence at all times, 24 hours a day, for the entire year. Miller was allowed to retain the truck during the winter months even though he would frequently not work and not be on La Salle's payroll because it was La Salle's slow season. The only sets of keys to the truck were in La Salle's office and in Miller's possession.

Miller stated he had made personal use of the truck prior to the date of the accident and had never been reprimanded for making personal use of the vehicle. Although he had never received verbal or written instructions from his supervisor at La Salle limiting or restricting his use of the truck, Miller acknowledged he knew he was violating company policy at the time of the accident.

Under La Salle's unwritten policy, employees were allowed to use company trucks for company business only. According to La Salle, any personal use of the truck by an employee would result in discharge. Miller was discharged from his position with La Salle after the accident. All of the employees who were in positions similar to Miller, who testified in court, stated that they had been given specific directions as to the prohibition of personal use of the vehicle.

La Salle's vice-president, Owen Seibert, testified that La Salle benefited from its foreman having possession of the trucks because the workers were able to go directly to the job site. Seibert maintained that in the event of an emergency, La Salle's foreman could quickly reach a problem area if the truck was in his possession. Ac-

cording to Seibert, the trucks were also used for storage of the company's bulky, heavy tools, which were frequently used each day.

At the time of the loss there was in effect a policy of insurance issued by Auto Owners covering Miller for his personal automobile use. The policy included coverage for Miller's operation of a non-owned vehicle subject to an exclusion which is the subject of this litigation. The exclusion portion of the insurance policy provided, in relevant part, as follows:

"(b) Coverage does not apply:

(1) To any automobile owned by, or furnished for regular use to the named insured or a member of its household other than a private chauffeur or domestic servant of the named insured or spouse ***."

The central issue to be decided in this case is whether, on the date of the accident, Miller was operating a vehicle that was furnished for his regular use within the meaning of his personal insurance policy and relevant case authority. On appeal, Auto Owners contends the trial court erred in finding Miller's company-owned vehicle was not furnished for Miller's regular use.

■■ The Illinois Supreme Court has held the term "regular use" is not subject to an absolute definition and its application should be interpreted on a case-by-case basis. (*State Farm Mutual Automobile Insurance Co. v. Differding* (1977), 69 Ill. 2d 103, 370 N.E.2d 543.) Differding was a student at Northern Illinois University. During the summer term, a professor made an auto available to Differding for the purpose of maintaining and preventing its deterioration while he was out of the country. Differding also sublet her professor's apartment, but maintained a permanent home with her parents in Park Forest. There were two limitations placed upon Differding's use of the auto; it was to be used only in the De Kalb area, and it was only to be used for the summer. In August while Differding was driving the auto from De Kalb to her home in Park Forest, she collided with a motorcycle.

At the time of the accident there were in force two policies of automobile liability insurance issued to Differding's family members. Each policy included a provision which provided coverage for non-owned automobiles that are not furnished for the regular use of persons residing in the same household. The Illinois Supreme Court affirmed the trial court's judgment that no coverage was afforded under the Differdings' policies.

The cases preceding and following *Differding* are the subject of controversy between the parties. Specifically, the defendants contend

the *Differding* court's findings are consistent with that of an earlier case, *Schoenknecht v. Prairie State Farmers Insurance Association* (1960), 27 Ill. App. 2d 83, 169 N.E.2d 148. In *Schoenknecht*, the plaintiff's employee provided him with a car to use in his work, and at the end of the day, plaintiff was required to return the car to his employer's shop. After his last call on the day in question, instead of returning the car, he drove it to visit friends. An accident occurred at approximately 11 p.m. that evening. The trial court found that an insurance policy issued by defendant on plaintiff's personal automobile provided coverage for this collision. On appeal, the defendant insurance company contended that coverage was not provided because the automobile involved in the collision had been furnished to plaintiff by his employer for his "regular use." The appellate court rejected that contention, stating that plaintiff was furnished the car for use only in connection with his employer's business during working hours. The use of the car to visit friends after hours was an isolated, casual and unauthorized use of the vehicle and thus did not come within the "regular use" exclusion.

The plaintiff argues *Differding* overruled *Schoenknecht* and that this court should follow two cases which came after the *Differding* decision. (See *Economy Fire & Casualty Co. v. Gorman* (1980), 84 Ill. App. 3d 1127, 406 N.E.2d 169; *State Farm Mutual Automobile Insurance Co. v. Bundy* (1988), 165 Ill. App. 3d 260, 519 N.E.2d 109.) *Differding, Gorman,* and *Bundy* are consistent in recognizing that the departure from permitted use by an individual, when driving an owner's vehicle, is not as a matter of law dispositive of the question of whether that vehicle has been furnished for the individual's regular use.

In *Gorman*, the insured's son, Gorman Jr., was involved in a collision while driving his employer's vehicle. His employer provided the automobile for him to use in making deliveries: the vehicle was never furnished to him for personal use. On the evening of the accident, Gorman Jr. drove the vehicle to a friend's home after working hours and later that night became involved in an accident. The court determined that the car at the time of the accident was furnished to Gorman Jr. on a regular basis. The court felt the facts in *Gorman* illustrated that the car was provided to Gorman Jr. for his use throughout each business day. The *Gorman* court considered *Schoenknecht* to have been overruled by *Differding*.

The second case decided by the fourth district after *Differding* is *State Farm Mutual Automobile Insurance Co. v. Bundy* (1988), 165 Ill. App. 3d 260, 165 N.E.2d 109, which also found an auto excluded

from coverage under a policy limitation for nonowned cars provided for an insured's "regular or frequent use." In *Bundy*, the court upheld the trial court's denial of coverage to Bundy for an accident which occurred while Bundy was using his employer's vehicle for personal reasons. The record revealed that Bundy had previously used the employer-owned truck for personal business. Bundy's employer's policy was to allow use of the vehicles provided permission was received. On the day in question, Bundy failed to obtain permission for use of the truck, which he was using to transport a refrigerator.

The defendant argues *Gorman* and *Bundy* have incorrectly interpreted the *Differding* decision to have silently overruled *Schoenknecht*. After analyzing all four of the above-mentioned cases, it can be determined that, although a different emphasis is placed upon the individual factors in the record, the courts' reasoning and result in each case is consistent. Each case examines the circumstance surrounding the individual employee's use of the company vehicle and each case reaches a result based upon the individual facts presented.

■ Applying the above-stated principles to the present case, it can be determined that Miller's vehicle was furnished to him for his regular use. This result can be reached by applying the analysis of any of the above-stated cases.

Without restating the facts as they were set forth in the introduction of this decision, it is our conclusion that there is not coverage in this case. Under the guidelines set forth in *Schoenknecht*, *Differding*, *Gorman* and *Bundy*, Miller was furnished the La Salle truck for regular use. A finding that the vehicle was not furnished for Miller's regular use would be a triumph of form over substance.

For the foregoing reasons the judgment of the circuit court of La Salle County is reversed.

Reversed.

SCOTT and HEIPLE, JJ., concur.